AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Marco Antonio MORADEL-Velasquez<br>Merli Antonio POSADAS-Maldonado and<br>Anderson FUENTES-Urango<br><br>*Defendant(s)* | )<br>)<br>) Case No. 8:16 MJ 1014 AEP<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __unknown to January 12, 2016__ in the county of __Hillsborough__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 46, United States Code, Sections 70503(a)(1), 70506(a) and 70506(b), and Title 21, United States Code, Section 960(b)(1)(B)(ii) | Conspiracy to possess with the intent to distribute five (5) kilograms or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jennifer M. Doherty
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/15/16

_____
*Judge's signature*

City and state: Tampa, FL

ANTHONY E. PORCELLI
*Printed name and title*

# AFFIDAVIT OF SPECIAL AGENT JENNIFER M. DOHERTY

Your affiant, Jennifer M. Doherty, being duly sworn, deposes and states the following:

1. I am a citizen of the United States, residing in Florida.

2. I am a Special Agent employed by the Drug Enforcement Administration (DEA). I have been so employed for approximately fourteen (14) years and four (4) months.

3. Based on my training and experience as a Special Agent with DEA, I have conducted investigations concerning violations of **Title 21, United States Code, Sections 959 and 960**, which prohibit the production, transportation, importation, distribution and possession of illegal drugs, including cocaine, and violations of **Title 46 Appendix, United States Code, Section 70503** (the Maritime Drug Law Enforcement Act), which prohibits drug trafficking on the high seas, including the possession with intent to distribute cocaine on vessels subject to the jurisdiction of the United States. Through these investigations, I have become familiar with the means and methods narcotics traffickers use to transport, import and distribute illicit drugs, as well as, the support and assistance that narcotics organizations require to conduct their illegal activities.

4. Since March of 2014, I have been assigned as a Special Agent to Operation Panama Express (North and South) Strike Force. Operation Panama Express is a federally approved Organized Crime Drug Enforcement Strike Force (OCDETF) investigation being conducted by the Drug Enforcement Administration (DEA), the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), the United States Coast Guard (USCG), the Internal Revenue Service (IRS) and state and local law enforcement agencies. Investigations initiated by Operation Panama Express are prosecuted in the Middle District of Florida (Tampa Division). Special Agents assigned to Operation Panama Express currently investigate cocaine smuggling organizations that are responsible for the transportation of cocaine through international waters of the Caribbean Sea (via vessel) to transshipment locations for later introduction and distribution to the United States.

5. This affidavit is submitted in support of a criminal complaint and the issuance of arrest warrants on the charges set forth herein for the following individuals:

(A) Marco Antonio MORADEL-Velasquez (Honduran National)

(B) Merli Antonio POSADAS-Maldonado (Honduran National)

(C) Anderson FUENTES-Urango (Colombian National)

who knowingly and willfully conspired to possess with the intent to distribute five (5) kilograms or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States, with the Middle District of Florida being the place at which the above individuals will first enter the United States, in violation of Title 46, United States Code, Sections 70503(a)(1), 70506(a) and 70506(b), and Title 21, United States Code, Section 960(b)(1)(B)(ii).

6. The information contained herein is either personally known to me or has been provided to me by other law enforcement officers with whom your Affiant has worked on this investigation. This affidavit is submitted for the limited purpose of establishing probable cause for the criminal charges set forth herein and, therefore, does not contain each and every fact known to me or other law enforcement agents concerning this investigation.

7. The United States Coast Guard (USCG) has the authority under 14 U.S.C. § 89 to make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce federal laws.

8. On January 11, 2016, while on routine patrol, a maritime patrol aircraft (MPA) located a suspect go-fast vessel (GFV) dead in the water, approximately 175 nautical miles (NM) northwest of Cartagena, Colombia. The CGC Forward (United States Coast Guard) was tasked to intercept the suspicious vessel. District Seven (D7) granted CGC Forward to conduct a Right of Visit (ROV) boarding. The CGC launched an Over The Horizon (OTH) boat and a HITRON helicopter to intercept the vessel. Due to the deteriorating sea state, OTH was

2

recovered by CGC Forward. CGC Forward decided to delay boarding until daylight for safety reasons.

9. On January 12, 2016, MPA relocated the DIW vessel and relayed its position to CGC Forward. D7 again granted CGC Forward the authorization to conduct a ROV boarding. The CGC launched an OTH boat. Once the OTH was two hundred yards from the vessel, the crew members tried to jettison contraband but were unable to but they did jettison a satellite telephone. All of the contraband onboard was tied to weighted batteries to facilitate in sinking. The CGC boarding team quickly acted and secured the scene and the crew members became compliant.

10. The GFV contained three (3) crewmembers, including the Master of the vessel, who claimed Colombian registry for the vessel. Based upon the statement provided by the Master, the United States Coast Guard (USCG) District Seven enacted the ship boarding provision of the Colombian Bilateral Agreement and submitted a request to the government of Colombia to confirm/deny registry of the GFV. The government of Colombia was ultimately unable to confirm or deny registration of the suspect GFV, whereupon, D7 subsequently assimilated the GFV to a vessel without nationality and granted permission to conduct a Law Enforcement Boarding.

11. Upon inspection CGC Forward boarding team located in plain view five (5) bales containing approximately one-hundred and twenty-four (124) kilograms of suspected contraband on the deck. Subsequent narcotics identification kit (NIK) testing conducted on the unknown substance yielded positive results for the presence of cocaine.

12. The boarding team subsequently completed the boarding with 100% At Sea Space Accountability (ASSA) with negative results. The GFV sank due to adverse weather conditions.

13. The three (3) crewmembers of the vessel were subsequently identified as

**Marco Antonio MORADEL-Velasquez, Merli Antonio POSADAS-Maldonado** and **Anderson FUENTES-Urango.** They were detained by the USCG and will first arrive here at a point within the Middle District of Florida on or about January 18, 2016.

14. In summary, the aforementioned stateless GFV fits the profile of a smuggling vessel capable of traveling at a high rate of speed and thus was considered a favorable vehicle for drug smuggling operations. The total value of the cocaine being smuggled on the GFV was at least $4.4 million. In my experience, drugs of this quantity and value are intended for large scale distribution. Furthermore, in my experience, drug smugglers would not allow an unknowing outsider onboard a vessel filled with approximately $4.4 million worth of contraband. In this case, given the probable length of the voyage, the size of the contraband shipment, the necessarily close relationship between crew on a vessel of this size and type, the obviousness of the contraband, the suspicious behavior before apprehension (attempted jettison of the contraband) there is probable cause to believe that the three (3) defendants named herein did knowingly and intentionally conspire to possess with intent to distribute five (5) kilograms or more of cocaine, while onboard a vessel subject to the jurisdiction to the United States, in violation of **Title 46, United States Code, Sections 70503 and 70506, Title 18, United States Code, Section 2, and Title 21, United States Code, Section 960(b)(1)(B)(ii)**, as described herein.

Affiant declares under penalty of perjury that the foregoing is true and correct.

_____
Special Agent Jennifer M. Doherty
Drug Enforcement Administration

Sworn to and subscribed before me
this 15th day of January, 2016.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

4